# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
))
RASHAD RASHEED,                        )
                                       )
        Plaintiff,                     )
                                       )        **Civil Action No.**
        v.                             )        **14-10378-FDS**
                                       )
DALE BISSONNETTE,                      )
MICHAEL THOMPSON, and                  )
LUIS SPENCER,                          )
                                       )
        Defendants.                    )
_____)

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a civil rights action under 42 U.S.C. § 1983.  Plaintiff Rashad Rasheed, an inmate at the Massachusetts Correctional Institution at Concord ("MCI-Concord"), has filed suit against various prison officials contending that they violated his constitutional rights by disregarding his mental-health needs and refusing to house him in a single cell.

On October 14, 2014, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff and defendants have both filed motions to strike affidavits.  For the following reasons, these motions will be granted in part and denied in part.

## I. Background

### A. Factual Background

The record, including the complaint, is not entirely comprehensible, and includes a

variety of documents and statements that are difficult to understand.[1]  Nonetheless, to the extent

the Court can do so, the facts will be presented in the light most favorable to the non-moving

party.

### 1.    Parties

Rashad Rasheed is a state prisoner confined at MCI-Concord.  (Compl. ¶ 4).  He is a

serial litigant.  Including this action, he has filed at least 16 actions in the District of

Massachusetts.  These actions are as follows:

1.    *Rasheed v. Butterworth*, Civil Action No. 78-01176-MLW (petition for writ of habeas corpus);

2.    *Rasheed v. Bender*, Civil Action No. 87-01957-RGS (petition for writ of habeas corpus);

3.    *Rasheed v. Commissioner of Corrections*, Civil Action No. 88-02027-MLW (section 1983 action)

4.    *Rasheed v. Duval, et al.*, Civil Action No. 93-12378-EFH (petition for writ of habeas corpus);

5.    *Rasheed v. Mundy, et al.*, Civil Action No. 94-11601-MLW (section 1983 action);

6.    *Rasheed v. DuBois, et al.*, Civil Action No. 94-12275-MLW (section 1983 action);

7.    *Rasheed v. Duval*, Civil Action No. 95-10804-DPW (petition for writ of habeas);

8.    *Rasheed v. D'Antonio et al.*, Civil Action No. 10-11253-GAO (section 1983 action);

9.    *Rasheed v. Conley*, Civil Action No. 11-11672-RGS (section 1983 action);

10.    *Rasheed v. Gelb*, Civil Action No. 12-11921-DJC (petition for writ of habeas corpus);

---

[1] The state of the record is presumably due in part to the fact that plaintiff is proceeding *pro se*.  The Court also notes that defendants have done a poor job of developing the record.

11.    *Rasheed v. Newry et al.*, Civil Action No. 12-12094-RGS (section 1983 action);

12.    *Rasheed v. Newry et al.*, Civil Action No. 12-12210-RGS (section 1983 action);

13.    *Rasheed v. Bissonnette et al.*, Civil Action No. 14-10378-FDS (present section 1983 action);

14.    *Rasheed v. Bissonnette et al.*, Civil Action No. 14-11240-DJC (section 1983 action);

15.    *Rasheed v. Thompson*, Civil Action No. 14-11885-IT (petition for writ of habeas corpus);

16.    *Rasheed v. Thompson*, Civil Action No. 14-12240-DPW (petition for writ of habeas corpus).

Nine of these actions appear to be civil rights actions, and seven appear to be habeas petitions.

Defendant Dale Bissonnette is the Deputy Superintendent of Classification and Programs at MCI-Concord.  (Compl. ¶ 5).  Defendant Michael Thompson is the Superintendent of MCI-Concord.  (*Id.* ¶ 6).  Until approximately July 2014, defendant Luis Spencer was the Commissioner of the Massachusetts Department of Corrections ("DOC").  (Compl. ¶ 7; Def.'s SMF ¶ 6).

## 2.    History of Mental-Health Evaluations

According to the complaint, in June 1993, Elaine Wasserman, a mental-health expert at MCI-Cedar Junction, reviewed the mental-health records of Rasheed and recommended that the DOC house him in a single cell without a cellmate due to his condition.  (Compl. ¶ 8).  On May 14, 2009, Brad Feltus, a mental-health expert at MCI-Souza Baranowski Correctional Center ("SBCC"), reviewed Rasheed's records and determined that "double bunking of this inmate poses a severe security risk to him and any other inmate placed in his cell.  Advocate [for] . . . single cell placement of this inmate due to his mental health . . . ."  (Rasheed Aff. Ex. B).  John

Beland, also a mental-health expert at SBCC, reviewed Rasheed's mental-health records on

January 5, 2010, and "agreed to advocate for a single cell." (Rasheed Aff. Ex. C). In his

evaluation, Beland noted that Rasheed posed "no apparent risk to [him]self [or] others." (*Id.*).[2]

Pursuant to Beland's recommendation, SBCC Deputy Superintendent Anthony

Mendonsa placed Rasheed on a single-cell restriction. (Compl. ¶ 11 (citing Compl. Ex. D)). A

January 6, 2010 letter from Mendonsa to Rasheed has been included in the record. (*See* Rasheed

Aff. Ex. E).[3] It is unclear whether the letter itself is the single-cell order or whether it is

recognizing a single-cell order issued separately. (*See id.*).[4] The letter states, "[p]lease be

advised that after a review by Mental Health Director John Beland, you have been placed on a

single cell restriction effective January 5, 2010. Once you are bailed the Assignment Sgt. Ron

Raymond will assign you to a unit." (*Id.*).

Rasheed apparently filed an action in 2010 for injunctive relief to prevent placement in a

cell with another inmate. (Compl. ¶ 12). At that time, an affidavit filed with the court said that

the "Department of Correction ha[s] no intention to house Mr. Rasheed with another inmate so

long as he is under the single cell restriction." (Compl. Ex. D (Mendonsa Aff. ¶ 17)). From

December 2011 to February 5, 2013, Rasheed was housed at MCI-SBCC in a single cell without

a cellmate. (Compl. ¶ 13).

Defendants contend that Rasheed's single-cell order was issued on January 7, 2010.

---

[2] The progress notes written by both Feltus and Beland are difficult to read. However, there does not appear to be any dispute that they contain the quoted language.

[3] The letter is labeled as "Ex. D," but based on the sequence of the documents submitted by plaintiff and the labeling of the documents surrounding the letter, it is clear that the letter is labeled in error. Accordingly, the Court will refer to the letter as Exhibit E.

[4] Defendants consistently refer to the date of the issuance of the single-cell order as January 7 rather than January 6.

(Defs.' SMF ¶ 8 (citing O'Neill Aff. ¶ 7).[5]  According to defendants, "[a]t the time [Rasheed] was given an order for a single cell he was not an open mental health case."  (*Id.* (citing O'Neill Aff. ¶ 7).  Defendants contend that the order noted that it would be reviewed if Rasheed was transferred to a new institution.  (*Id.* (citing O'Neill Aff. ¶ 7); *see also* Bissonnette Aff. ¶ 6)).  Although defendants did not point to a specific document in the record, a copy of Rasheed's Inmate Management System ("IMS") Medical Restrictions Report generated on March 11, 2013, identified a mental-health single-room restriction with a start date of January 7, 2010, and an end date of February 5, 2013.  (Rasheed Aff. Ex. N).  The IMS report noted that the restriction was not indefinite, and the comments included the notation, "review single cell status upon classification to another facility other than SBCC."  (*Id.*).[6]  Defendants contend that "[o]rders for a single cell based on mental health needs are made based on a diagnosis and a clinical indication."  (O'Neill Aff. ¶ 8).  "Such orders are not interminable as mental health needs are fluid."  (*Id.*).

### 3.    Transfer to MCI-Concord

On February 5, 2013, Rasheed was transferred to MCI-Concord.  (Compl. ¶ 14).  The complaint alleges that Spencer was responsible for Rasheed's transfer, and that contrary to the

---

[5] Rasheed has moved to strike the affidavits of Katherine O'Neill and Dale Bissonnette submitted in support of defendants' motion to dismiss on the grounds that defendants failed to attached "certified copies of the referred to single cell order and the February 5, 2013 mental health evaluation of Rasheed."  (Pl.'s Mot. Strike Affs.).

[6] Pursuant to 103 DOC 207.04, "[i]f medical staff determines that a medically prescribed accommodation is warranted, he/she shall convey the medical order to the Institution ADA Coordinator via the Medical Restrictions Form . . . as per policy 103 DOC 630 and shall enter the order in the 'Restrictions/Limitations/Special Needs' section of the 'Medical Restrictions' screen of the Medical Module of the IMS."  Under 103 DOC 630.16, "[a]ll intra-system transfers shall be screened by health trained or qualified health care personnel immediately upon arrival. . . . A recommended disposition based on observations, inquiry and findings must . . . be included."  This section states that "[a]t facilities utilizing the Inmate Management System (IMS), disposition shall be updated via the Medical Orders screen.  Additionally, the Mental Health/Substance Abuse History, Medical Orders, and Medical Restrictions/Special Needs screens shall be updated if necessary."  *Id.*

three mental-health recommendations on file, after the transfer Rasheed was placed in a double cell with a cellmate. (*Id.*).

According to defendants, when Rasheed was transferred to MCI-Concord, a thorough review of his mental-health needs was conducted and there was no clinical indication for placement in a single cell. (O'Neill Aff. ¶ 9). The single-cell order was discontinued on February 11, 2013 by the mental-health director at MCI-Concord. (O'Neill Aff. ¶ 9).[7] The February 11, 2013 decision appears to be memorialized in a document submitted by Rasheed. In a copy of the IMS Medical Restrictions Report generated on March 11, 2013, there is an entry dated February 11, 2013 by Meaghan Dupuis, who is identified as the mental-health director. (Rasheed Aff. Ex. O). The entry states that the inmate "transferred from SBCC 2/5/13. [He] does not meet criteria for [mental health] single cell at this facility. [He] is not an open [mental health] case. Single cell order terminated." (*Id.*).

Subsequent communications to Rasheed confirmed that medical determination. In a March 13, 2013 letter to Rasheed, Abby Wilson, a mental-health professional, wrote as follows:

> [u]pon [Rasheed's] arrival at MCI-Concord on 2/5/13 [he] had reported that [he] had a current single cell order. At that time the Mental Health Director reached out to SBCC regarding [his] single cell order in IMS, reviewed [his] medical charts and also [his] 6 part folder. The single cell order in IMS states: 'Review single cell status upon classification to another facility other than SBCC.' Based on a thorough

---

[7] The mental-health staff is composed of employees of Massachusetts Partnership for Correctional Health ("MPCH"). (Defs.' SMF ¶ 11 (citing Bissonnette Aff. ¶ 6; O'Neill Aff. ¶ 3)). The DOC contracts with MPCH to provide all medical, dental, and mental-health services to more than 11,000 prisoners incarcerated at DOC facilities. (*Id.* ¶ 12 (citing O'Neill Aff. ¶ 3)). The contract places MPCH in charge of "making all decisions with respect to the type, timing and level of services needed by inmates covered under the contractual agreement with the Department of Correction." (103 DOC 610.01; Defs.' SMF ¶ 12 (citing O'Neill Aff. ¶ 3; Ex. A-1)). According to defendants, medical professionals are charged with exercising independent clinical professional judgment without any interference from DOC employees. (Defs.' SMF ¶¶ 13-14 (citing O'Neill Aff. ¶¶ 4-5; Mass DOC Clinical Contract). It is undisputed that "[t]he mental health treatment that is afforded to inmates complies with the standards of the American Correctional Association and the National Commission on Correctional Health." (Defs.' SMF ¶ 15 (citing O'Neill Aff. ¶ 6)).

review of this information it was determined that [his] single cell order that was active at SBCC was terminated upon transfer to MCI-Concord.

(Rasheed Aff. Ex. M).  A March 14, 2013, letter form Bissonnette to Rasheed states:

> documentation revealed that from January 7, 2010 until February 5, 2013 mental health staff at [SBCC] ordered a single cell for you.  The documentation clearly states that a review of the single cell status will occur upon classification to another facility other than SBCC.  Further documentation shows that on February 11, 2013, MCI Concord Mental Health staff reviewed the status of the order and determined that you are not an open Mental Health patient and do no meet criteria for a mental health single cell at this facility.  Therefore, the medical order was not renewed.  If you have mental health concerns, you may submit a sick slip in order to be scheduled for an evaluation.

(Rasheed Aff. Ex. P).  Letters from Bissonnette to Rasheed dated April 9 and April 25, 2013, contain similar communications.  (*See* Rasheed Aff. Exs. X, Z).

### 4.    Placement and Discipline at MCI-Concord

According to the complaint, upon arrival at MCI-Concord, Bissonnette ordered that Rasheed be placed in "L-Dorms" with at least 80 other inmates.  (Compl. ¶ 15).  When Rasheed refused to accept that placement, he was placed in the Special Management Unit ("SMU").  (*Id.*).  On February 6, 2013, Bissonnette visited Rasheed in SMU, and Rasheed provided him with copies of the May 14, 2009 and January 5, 2010 single-cell recommendations.  (*Id.* ¶ 16).  He also alleges that he gave Bissonnette a copy of the DOC single-cell order.  (*Id.*).  The complaint alleges that Bissonnette reviewed these recommendations and told Rasheed that "Concord don't do single cells."  (*Id.*).

After the meeting, Bissonnette allegedly ordered that Rasheed be placed in "L-Dorms" with at least 80 other inmates.  (*Id.* ¶ 17).  The complaint alleges that Rasheed felt compelled to accept this placement.  (*Id.*).  During his stay in the "L-Dorms," he allegedly slept less than two hours per night because he was "in constant fear during the night that he would [be] attacked."

(*Id.*).  In March 2013, Bissonnette allegedly ordered Rasheed into "West Down" to be double-bunked with a cellmate.  (*Id.* ¶ 18).  Rasheed refused the assignment, and Bissonnette ordered a disciplinary report.  (*Id.*).  Rasheed was then placed in SMU.  (*Id.*).

Pursuant to Mass. Gen. Laws ch. 124 § 1(i), Rasheed filed a formal grievance with the DOC.  (*Id.* ¶ 19).  He alleges that he provided Spencer with copies of his mental-health single-cell recommendations and the DOC January 6, 2010 single-cell order.  (*Id.*).  According to the complaint, Spencer failed to respond to the grievance.  (*Id.*).

Between March and June 2013, Bissonnette twice ordered Rasheed to be placed in double bunk cells with a cellmate.  (*Id.* ¶ 20).  Rasheed refused both times, and he was placed in SMU.  (*Id.*).  In June 2013, Rasheed alleges that he provided Thompson with a copy of his single-cell recommendation and requested that he order Bissonnette to release him from SMU and house him in a single cell.  (*Id.* ¶ 21).  According to the complaint, Thompson looked at Rasheed and walked away from his cell without taking any action.  (*Id.*).

Rasheed was then given a choice to either remain in SMU or be placed back in the "L-Dorms" with 80 other inmates.  (*Id.* ¶ 22).  The complaint appears to allege that he was placed back in the "L-Dorms" and was put on a top bunk even though he had documented back problems.  (*Id.*).  It alleges that both Thompson and Bissonnette were aware of Rasheed's back condition.  (*Id.*).  From June 2013 to September 2013, Rasheed was housed in the "L-Dorms." (*Id.* ¶ 23).  During his stay in the "L-Dorms," he "was deprived of sleep and was in constant fear that he was going to be attacked during the night."  (*Id.*).  Also, he had at least three heated arguments with other prisoners.  (*Id.*).  On several occasions, he complained about the situation and requested he be moved from the "L-Dorms" to a single cell without a cellmate.  (*Id.* ¶ 24).

The complaint alleges that his requests were all ignored.  (*Id.*).  In September 2013, Bissonnette and Thompson allegedly ordered Rasheed to be moved from the "L-Dorms" to a double-bunked cell with a cellmate in the West Down.  (*Id.* ¶ 25).  When Rasheed refused, another disciplinary report was written, and he was placed in the SMU.  (*Id.*).

Rasheed was placed back in the "L-Dorms" in September 2013.  (*Id.* ¶ 26).  He again allegedly experienced sleep deprivation.  (*Id.*).  The complaint alleges that his sleep deprivation combined with his mental illness caused him to assault another inmate.  (*Id.* ¶ 27).  As a result of the assault, he was removed from the "L-Dorms" and placed back in SMU.  (*Id.*).

On November 25, 2013, Thompson and Bissonnette allegedly ordered Rasheed to move to C-Building to be double-bunked in cell 33 with a cellmate.  (*Id.* ¶ 32).  They ordered him to move again on January 14, 2014, but Rasheed refused to move to West Down cell 133.  (*Id.* ¶ 33).  Another disciplinary report was written, and Rasheed was placed in SMU.  (*Id.*).

According to defendants, no DOC employees were involved in the mental-health determination that plaintiff did not meet the mental-health criteria for a single cell.  (Defs.' SMF ¶ 16 (citing Bissonnette Aff. ¶ 6)).  In May 2014, the mental-health staff at MCI-Concord opened a case for Rasheed as a result of his "intermittent contact with [m]ental [h]ealth [s]taff about the termination of the single cell."  (O'Neill Aff. ¶ 10).[8]  "He is currently classified as a MH1, indicating stability. . . .  He is not on medication, has never required a mental health watch, does not have a history of self injurious behavior, nor does he access crisis services.  It remains the

---

[8] The record includes a June 23, 2014 document that is entitled "Mental Health—Initial Treatment Plan." (Rasheed Aff. Ex. I-1).  The document appears to indicate a meeting between Rasheed and Meaghan Dupuis for appraisal and mental-health evaluation.  (*See id.*).  In the treatment discussion, Dupuis noted that inmate "has been open [mental health] in the past but has not engaged in [mental health] treatment in the last 5+ years. [Inmate] does exhibit signs of PTSD and is anxious about current legal issues that might result in release to the community.  No clinical indication for psych meds at this time."  (*Id.*).

clinical opinion of the MPCH mental health team that he does not have a functional impairment that requires placement in a single cell at this time." (*Id.*).

5.    <b><u>The NEADS Program</u></b>

The National Education for Assistance Dog Services ("NEADS") is a program that has partnered with the DOC for more than twenty years. (Defs.' SMF ¶ 19 (citing Bissonnette Aff. ¶ 8)). In 2012, the program began at MCI-Concord. (*Id.* (citing Bissonnette Aff. ¶ 8); *see also* Compl. ¶ 30). As part of the program, dogs in the NEADS program are placed in cells with inmates. (Compl. ¶ 28; *see also* Defs.' SMF ¶ 19 (citing Bissonnette Aff. ¶ 8)). Ten double cells at MCI-Concord were modified for the NEADS program. (Defs.' SMF ¶ 19 (citing Bissonnette Aff. ¶ 8)). In those cells, the bottom bunk was removed and replaced with a dog's crate. (*Id.* (citing Bissonnette Aff. ¶ 8)). The top bunk remains for inmates. (*Id.* (citing Bissonnette Aff. ¶ 8)).

On November 22, 2013, Thompson and Bissonnette placed Rasheed in a double-bunked cell with a cellmate. (Compl. ¶ 31). The complaint alleges that the dogs in the NEADS dog program in cellblock J-1 were treated more favorably. (*Id.*). As a result, he filed a grievance with the DOC. (*Id.*). The grievance was denied by Thompson. (*Id.* (citing Compl. Ex. E)).

<b>B.    <u>Procedural Background</u></b>

On February 13, 2014, Rasheed filed the complaint in this action. The complaint alleges Eighth Amendment violations resulting from defendants' deliberate indifference to Rasheed's mental-health needs. The complaint alleges that "defendants, [and,] more specifically[,] Spencer[,] refuses to obey their mental health experts['] recommendations to assign and house Rasheed in a single cell without a cellmate, because of their statewide policy of intentionally

disregarding mental health and medical single cell without a cellmate recommendations."

(Compl. ¶ 34). Furthermore, the complaint alleges that "[d]efendants have refused to modify

their statewide housing policy to accommodate Rasheed's serious mental health needs and

disability and thereby prevented [him] from participating in the Department of Correction

statewide inmate housing program, while treating the dogs in the NEADS Program more

favorabl[y]." (*Id.* ¶ 35). Rasheed appears to seek (1) a declaratory judgment that defendants'

actions constitute deliberate indifference and are in violation of the Eighth Amendment; (2)

injunctive relief that includes, among other things, a permanent single-cell order; (3)

compensatory damages; (4) punitive damages; (5) and costs and attorneys fees. (Compl. 9-12).

On the same date that Rasheed filed the complaint, he also filed a motion for preliminary

injunction, seeking to have the DOC assign him a single cell without a cellmate. The Court

denied that motion on July 11, 2014.

On October 14, 2014, defendants filed a motion to dismiss for failure to state a claim on

the grounds that (1) there has been no violation of the Eighth Amendment, (2) defendants have

no role in plaintiff's mental-health care, and (3) double-bunking does not violate the Eighth

Amendment. In the alternative, defendants moved for summary judgment. Defendants attached

affidavits of Bissonnette and Katherine O'Neill in support of the motion for summary judgment.

Rasheed has moved to strike the affidavits pursuant to Fed. R. Civ. P. 56(e) and (h)

because defendants failed to file certified copies of documents to which the affidavits make

reference. In his opposition to defendants' motion to dismiss or for summary judgment, Rasheed

attached his own affidavit in support of his opposition. Defendants moved to strike that affidavit

on the grounds that the affidavit makes broad legal conclusions and contains solely Rasheed's

opinions. Rasheed, in turn, responded with a motion to strike defendants' motion to strike as untimely.

On February 11, 2015, the Court entered an order in which it stated that it "may consider defendants' motion as a motion for summary judgment. Although plaintiff responded to defendants' motion with his own statement of material facts with supporting materials, he is proceeding *pro se* and will be given another opportunity, if he so elects, to present materials in his opposition to the motion." The Court gave Rasheed until March 9, 2015 to file supplemental affidavits or other materials in opposition to the motion. On February 23, 2015, Rasheed filed a supplemental affidavit in opposition to defendants' motion with 66 pages of supporting materials. Defendants then filed a motion to strike Rasheed's supplemental affidavit.

## II.     Possible Application of 28 U.S.C. § 1915(g)

As a preliminary matter, the Court will examine whether Rasheed's action is barred under the three-strikes provision of 28 U.S.C. § 1915. Pursuant to this provision,

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may [sic] be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Here, pursuant to 28 U.S.C. § 1915, plaintiff is pursuing this action *in forma pauperis*. The complaint does not allege that he is under "imminent danger of serious physical injury." The issue is whether he has previously brought three or more actions that have been "dismissed on the grounds" that they are "frivolous, malicious, or fail[] to state a claim upon which relief may [sic] be granted."

Rasheed is a serial litigant who has filed at least sixteen actions in the District of

Massachusetts. Seven of these actions appear to have been habeas petitions. The great weight of the case law supports a finding that "dismissals of habeas petitions filed pursuant to sections 2254 or 2255 cannot constitute strikes for purposes of the PLRA." *Jones v. Smith*, 720 F.3d 142, 146 (2d Cir. 2013) (citing *Mitchell v. Federal Bureau of Prisons*, 587 F.3d 415, 418 (D.C. Cir. 2010); *Andrews v. King*, 398 F.3d 1113, 1122 (9th Cir. 2005); *Jennings v. Natrona Cnty. Det. Cetr. Med. Facility*, 175 F.3d 775, 779 (10th Cir. 1999); *Paige v. Bacarisse*, 80 Fed. Appx. 299 (5th Cir. 2003) (per curiam)). Therefore, the Court must examine whether three of the nine non-habeas petitions have previously been dismissed as frivolous, malicious, or for failure to state a claim.

Three of Rasheed's prior actions that have been dismissed might form the basis of a three-strike bar. (*See Rasheed*, Civil Action No. 94-11601-MLW; *Rasheed*, Civil Action No. 11-11672-RGS; *Rasheed*, Civil Action No. 12-12094-RGS). In *Rasheed v. Mundy, et al.*, Civil Action No. 94-11601-MLW, Rasheed filed an action under section 1983 "seeking redress for violations of [his] constitutional rights . . . , arising out of" defendants' concealment of exculpatory police reports, conspiracy to violate plaintiff's constitutional rights to due process and to confront witnesses against him, First Amendment retaliation, wrongful discrimination, and invidious discrimination. Compl., *Rasheed*, Civ. Action No. 94-11601-MLW (D. Mass. July 26, 1994). Defendants filed a motion to dismiss because (1) the complaint was filed after the expiration of the applicable limitations period, (2) Rasheed was collaterally estopped from relitigating his criminal conviction, and (3) defendant police officers were absolutely immune for testimony given at plaintiff's criminal trial. On October 10, 1995, the court granted the motion to dismiss. Order, *Rasheed*, Civ. Action No. 94-11601-MLW (D. Mass. Oct. 10, 1995). In its

order, the Court wrote that "[p]laintiff has failed to respond to defendants' . . . motion to dismiss . . . . The motion to dismiss appears meritorious. Accordingly, defendants' motion to dismiss . . . is ALLOWED." *Id.*

In *Rasheed v. Conley*, Civil Action No. 11-11672-RGS, Rasheed filed an action under section 1983 alleging due process violations based on the denial of certain evidence "related to the offenses alleged in indictments." The court dismissed the complaint because (1) the issues raised had been previously considered in a prior case in this court; (2) a "district court has inherent authority to dismiss a frivolous or malicious complaint sua sponte;" and (3) "on its face, the civil rights claim alleged here . . . is barred by the statute of limitations for civil rights action." *Id.* The court declined to exercise supplemental jurisdiction over any state-law claims, and dismissed those claims without prejudice to him filing in state court, "if he is permitted to do so." *Id.* On appeal, the First Circuit affirmed the judgment and concluded that "[e]ven if plaintiff's request for evidence for the purpose of forensic testing were to constitute a claim different from one previously raised, the claim is without merit." *Rasheed v. Conley*, No.12-1888 (1st Cir. Apr. 9, 2013).

In *Rasheed v. Newry, et al.*, Civil Action No. 12-12094-RGS, Rasheed filed a complaint under section 1983, alleging, among other claims, deliberate indifference to his medical needs in violation of the Eighth Amendment. Defendants moved to dismiss because Rasheed had failed to plead sufficient facts to state a claim, the issue had previously been ruled upon by the court, his claims were moot, and claims against Massachusetts agencies are barred under the Eleventh Amendment. *Id.* The court dismissed the claims against the Massachusetts agencies for lack of subject-matter jurisdiction because of sovereign immunity. *Rasheed*, Civil Action No. 12-

12094-RGS (D. Mass. June 12, 2013).  The court also noted that the claims against the Massachusetts agencies "lack substantive viability. . . . [because a] disagreement by a prisoner with the informed decision of a medical professional over the proper course of treatment does not raise a constitutional issue."  *Id.* at 10 n.6.  In a footnote, the court dismissed the claims against individual defendants for failure to state a claim.  *Id.* at 7 n.4.  The First Circuit affirmed the judgment for "the reasons given by the district court."  *Rasheed v. Newry*, No. 13-1977 (1st Cir. Oct. 1, 2014).

It is unclear whether these three cases provide the requisite three strikes to bar Rasheed from proceeding *in forma pauperis*.  For example, in the 1994 action, the court dismissed the action because the motion to dismiss "appears meritorious."  The court's dismissal, however, may have been based in part on the failure of plaintiff to file an opposition to the motion to dismiss.  In the 2011 action, the court provided three reasons for dismissing the case.  However, the court declined to exercise supplemental jurisdiction, and did not address the merits of those claims.  In the 2012 action, the court dismissed claims against individual defendants for failure to state a claim.  However, the court dismissed the claims against state defendants on subject-matter jurisdiction grounds.  Some courts have held that the entire matter must be dismissed on one of the specific statutory grounds to qualify as a "strike."  *See Byrd v. Shannon*, 709 F.3d 211, 219 (3d Cir. 2013), *vacated on rehearing by* 715 F.3d 117 (3d Cir. 2013); *Tolbert v. Stevenson*, 635 F.3d 646, 650-51 (4th Cir. 2011) ("[Section] 1915(g) requires that a prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike.").  Even under that standard, however, dismissal may be appropriate; Rasheed's claims appeared to lack merit in all three actions, the First Circuit affirmed the dismissals when appealed, and language in all three

actions suggested that the complaints were without merit.

Rather than resolve the issue, the Court will dismiss this action on other grounds. It therefore will not decide whether Rasheed should be barred from bringing an action pursuant to 28 U.S.C. § 1915.

## III.  Cross Motions To Strike

### A.  Legal Standard

As a general matter, only evidence that would be admissible at trial may be considered in connection with a motion for summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990). Pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." A motion to strike is the proper vehicle for challenging the admissibility of evidence offered at the summary judgment stage. *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994). "The moving party must specify the objectionable portions of the affidavit and the specific grounds for objection. Furthermore, a court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it." *Id.* (citation omitted); *see also Perez v. Volvo Car Corp.*, 247 F.3d 303, 315-16 (1st Cir. 2001).

### B.  Analysis

#### 1.  Plaintiff's Motion To Strike Defendants' Affidavits

Defendants submitted two affidavits in support of their motion to dismiss or, in the alternative, for summary judgment. Rasheed has moved to strike these affidavits on the grounds

that defendants failed to attach documents in support of the affidavits as required under Fed. R. Civ. P. 56(e).  (Pl.'s Mot. Strike ¶ 7 (Docket No. 33)).[9]

Fed. R. Civ. P. 56 was restylized in 2010.  Prior to the restyling of the rule, Fed. R. Civ. P. 56(e) required that "if a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."  This exact requirement does not appear in the restylized version.  According to the advisory committee notes to the 2010 amendment, "[s]ubdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). . . .  The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record."  It therefore appears that the requirement remains in place.

Here, defendants submitted affidavits of Dale Bissonnette and Katherine O'Neill.  Bissonnette stated that "I am aware that at SBCC, Mr. Rasheed had a mental health order for a single cell.  His order for a single cell clearly stated that a review of the single-cell status would occur upon classification to another facility other than SBCC."  (Bissonnette Aff. ¶ 6).  O'Neill also referred to the order and stated that "[i]t was noted on the order that the order for a single cell would be reviewed if he was transferred to a new institution."  (O'Neill Aff. ¶ 7).  Defendants did not, however, attach a copy of the single-cell order with the affidavits.  The failure to submit a copy of the order with the affidavits is not necessarily fatal, as long as the order is somewhere in the record in a sworn, certified, or agreed-upon form.  O'Neill refers to the single-cell order as being dated January 7, 2010.  Rasheed contends that a January 6, 2010

---

[9] Defendants did not submit an opposition to plaintiff's motion to strike.

letter from Anthony Mendonsa is the single-cell order. (*See* Rasheed Aff. Ex. E). The letter makes no mention of the single-cell order being reviewable upon transfer to a new institution. However, the record also includes an item entitled "medical restrictions" from Rasheed's inmate management system ("IMS") database. (*See* Rasheed Aff. Ex. N). An entry described as "single room" has a start date of January 7, 2010, and contains a comment stating, "review single cell status upon classification to another facility other than SBCC." (*Id.*). It appears from official Massachusetts DOC policy that the IMS database report should contain all official medical orders. *See* 103 DOC 630.16; 103 DOC 207.04. However, defendants did not specifically point to the document in the record when referring to the single-cell order.

As a result, the record is at least somewhat unclear. In any event, the result of the motion for summary judgment will not turn on whether Bissonnette and O'Neill's affidavits should be struck to the extent they refer to the single-cell order. Therefore, the motion to strike will be denied.

Defendants' affidavits also refer to the Concord mental health staff determination that plaintiff did not meet the criteria for a mental-health single-cell placement. Bissonnette stated that "[w]hen he arrived at MCI-Concord, Mr. Rasheed was evaluated by the MCI-Concord mental health staff and the mental health staff determined that he did not meet the criteria for a mental health single cell at MCI-Concord." (Bissonnette Aff. ¶ 6). Likewise, O'Neill stated that "[w]hen Mr. Rasheed was transferred to MCI-Concord on February 5, 2013, a thorough review of his mental health needs was made and there was no clinical indication for an order for a single cell. Thus, the single cell order was discontinued on February 11, 2013 by the Mental Health Director at MCI-Concord." (O'Neill Aff. ¶ 9). Plaintiff has moved to strike these statements

because "defendants failed to attach . . . the February 5, 2013 mental health evaluation of Rasheed." (Pl.'s Mot. Strike Affidavits ¶ 1). The affidavits do not make reference to "a paper or part of a paper" with respect to this medical determination, and therefore, there is no need for "a sworn or certified copy [to] be attached to or served with the affidavit[s]." In any event, plaintiff himself included the February 11, 2013 IMS medical restriction report entry that determines that inmate "does not meet criteria for [mental health] single cell at this facility." (*See* Rasheed Aff. Exs. M, N, O, P, X, Z). Therefore, the motion to strike the statements in the affidavits regarding the Concord mental health staff's determination will be denied.

### 2. Defendants' Motion To Strike Plaintiff's Affidavit

Defendants have moved to strike Rasheed's affidavit in opposition to their motion for summary judgment on the grounds that the affidavit includes "broad legal conclusions" and plaintiff's unsupported opinion that "should not be included in an [a]ffidavit." (Defs.' Mot. Strike ¶¶ 3-5). Rasheed has moved to strike defendants' motion as untimely because it was filed more than 14 days after the filing of his response to the motion for summary judgment. Defendants also moved to strike Rasheed's supplemental affidavit.

Although there is no specific rule about the timing for motions to strike, common sense suggests that they should be filed at the same time as the responsive pleading to which they relate. Here, Rasheed filed his affidavit in opposition to the motion for summary judgment on November 10, 2014. The affidavit appears to have been docketed on November 18. Defendants filed their motion to strike on December 8. If defendants had only the 14 days permitted to file a reply under Local Rule 56.1 to file their motion to strike, their motion to strike would be untimely. Nonetheless, although the motion to strike appears to have been filed late, no

prejudice appears to have resulted. Under the circumstances, the Court will overlook the delay and address the merits of the motion.

Defendants have moved to strike certain statements in Rasheed's affidavit on the grounds that the statements contain broad legal conclusions and opinions that are not based on personal knowledge. Specifically, defendants challenge paragraphs 4, 24, and 54 of the affidavit. It is certainly true that the statement that "defendants are not entitled to summary judgment because there are genuine issue of material fact to be resolved" (Rasheed Aff. ¶ 4) states a legal conclusion, and will therefore be struck. In addition, the affidavit contains statements that do not appear to be based on personal knowledge, such as "[o]n February 5, 2013 [d]efendant Spencer forced me to transfer from MCI-SBCC to MCI-Concord" (Rasheed Aff. ¶ 24) and "[d]efendants have intentionally and knowingly fabricated and falsified my IMS medical and mental health restriction screen" (Rasheed Aff. ¶ 54). Plaintiff does not state the basis for these statements, and provides conclusory allegations and opinion without explanation. Those statements will be struck as well.

Likewise, plaintiff's supplemental affidavit includes legal conclusions and opinions and statements that are not based on personal knowledge. Statements in the affidavit that allege defendants lied or falsified documents represent conclusions and do not appear to be based on personal knowledge, and will be struck. Rasheed's suggestion that he had a "permanent single cell order" also does not appear to have been made with personal knowledge. Furthermore, no document in the record contains such language, and therefore the statement appears to be simply Rasheed's opinion.

In summary, to the extent that Rasheed's affidavits include legal conclusions and

unsupported statements or opinions, those statements are not admissible and will be struck.

Therefore, defendants' motions to strike the affidavits will be granted in part and denied in part.

## IV.    Motion To Dismiss or for Summary Judgment

### A.    Legal Standard

Defendants have filed a motion to dismiss, or in the alternative, for summary judgment.

A motion to dismiss under Rule 12(b)(6) and a motion for summary judgment under Rule 56

"share a functional nexus." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1990).

The fundamental difference between the two motions is whether the court will consider "matters

'outside' the pleadings." *See id.* On a motion to dismiss the court only considers the pleadings.

*See id.*[10] On a motion for summary judgment, however, the court will consider other evidence,

such as affidavits. *See id.* A court can transform a motion to dismiss into a motion for summary

judgment. *See id.*; Fed. R. Civ. P. 12(d). Because resolution of the motion here requires

consideration of matters outside the pleadings, the motion will be treated as one for summary

judgment.

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when

the moving party shows that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[]

mandates the entry of summary judgment 'against a party who fails to make a showing sufficient

---

[10] Material attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the court may consider them without converting a motion to dismiss into a motion for summary judgment. *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.

## B.    Analysis

Section 1983 "creates a private right of action for redressing abridgements or deprivations of federal constitutional rights."  *McIntosh v. Antonio*, 71 F.3d 29, 33 (1st Cir. 1995).  "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law."  *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008).

The complaint here appears to allege that defendants violated Rasheed's Eighth Amendment rights by (1) formulating a policy of ignoring medical single-cell orders and double-bunking inmates and (2) ignoring Rasheed's single-cell order and ordering him to double-bunk. The complaint also appears to allege a violation of his rights under the Equal Protection clause

by instituting the NEADS program at MCI-Concord.[11]

## 1.    Eighth Amendment Violations

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." Although the original concern of the drafters appears to have been "torture" and other "barbarous" methods of punishment, the scope of the Amendment has broadened over time to include punishments that "involve the unnecessary and wanton infliction of pain." *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted) (internal quotation marks omitted). The Supreme Court has explicitly held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Id.* at 104 (internal quotation marks omitted). A "prison official is a proper defendant in an Eighth Amendment suit if that official was 'personally involved' in the decision to deny treatment for [p]laintiff's serious medical need." *Alexander v. Weiner*, 841 F. Supp. 2d 486, 491 (D. Mass. 2012); *see also*

---

[11] The complaint also appears to allege violations of 42 U.S.C. § 12102, 103 DOC 400.08, and 105 CMR 451.

42 U.S.C. § 12102 contains the definition of "disability" for purposes of the Americans with Disabilities Act ("ADA"). It is possible that Rasheed meant to allege a violation of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute defines "public entity" to include "any State or local government" and "any department, agency, special purpose district or other instrumentality of a State . . . or local government," 42 U.S.C. § 12131(1), which includes state prisons. *See Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998). The complaint, however, does not contain sufficient allegations to establish an ADA violation. Accordingly, to the extent the complaint contains ADA claims, those claims will be dismissed.

The first regulation, 103 DOC 400, contains the Department of Correction policy for inmate management. It appears from plaintiff's filings that 103 DOC 400.08 was formerly the provision for "Housing Cell Assignments." The second regulation, 105 CMR 451, is the provision of the Code of Massachusetts Regulations for the Department of Health's section entitled "Minimum Health and Sanitation Standards and Inspection Procedures for Correctional Facilities." Neither of these provisions contains a private right of action. In any event, the complaint does not contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint therefore does not contain sufficient allegations to establish any potential violation of these regulations. Accordingly, to the extent the complaint contains any claims related to these provisions, those claims will be dismissed.

*Pandey v. Freedman*, 1995 WL 568490, *2 (1st Cir. Sept. 26, 1995) ("a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In order to succeed on a deliberate-indifference claim based on inadequate medical care, "a plaintiff must satisfy both a subjective and objective inquiry." *Leavitt v. Correctional Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) (citing *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002)). Subjectively, he must show "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." *Id.* Objectively, he must establish that the deprivation alleged was "sufficiently serious." *Id.* "The standard encompasses a 'narrow band of conduct': subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim; rather the treatment must have been so inadequate as to constitute 'an unnecessary and wanton infliction of pain' or to be 'repungant to the conscience of mankind.'" *Id.* at 497 (quoting *Feeney v. Correctional Medical Services, Inc.*, 464 F.3d 158, 162 (1st Cir. 2006); *Estelle*, 429 U.S. at 105-06. Furthermore, a mere "disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991).

Here, Rasheed alleges that defendants were deliberately indifferent to his mental-health needs by refusing to house him in a single-occupancy cell at MCI-Concord after he received a single-cell mental-health order at SBCC. Rasheed also contends that a genuine issue of material

fact exists, namely whether the single-cell order from SBCC was non-reviewable, as he

contends, or whether it specified review upon transfer to another institution, as defendants

contend.

As a preliminary matter, there is no constitutionally protected right to assignment to a

single cell. The Due Process Clause of the Fourteenth Amendment prohibits a state from

depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend.

XIV, § 1. Analysis of procedural due process claims proceed in two steps: "We first ask

whether there exists a liberty or property interest of which a person has been deprived, and if so

we ask whether the procedures followed by the State were constitutionally sufficient."

*Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). It is well-established that an inmate holds no

liberty or property interest in a single-occupancy cell. *See Bell v. Wolfish*, 441 U.S. 520, 542

(1979) (holding that there is no "'one man, one cell' principle lurking in the Due Process

Clause"). It is also well-established that double-bunking inmates is not an Eighth Amendment

violation *per se*. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (holding that double-bunking

inmates is not per se unconstitutional). However, "in rare cases [double bunking] might amount

to an unlawful practice when combined with other adverse conditions." *Cote v. Murphy*, 152

Fed. App'x 6, 7 (1st Cir. 2005) (citing *Bell*, 441 U.S. at 552; *Inmates of Suffolk County Jail v.

Rufo*, 12 F.3d 286, 293-94 (1st Cir. 1993)).

Rasheed appears to contend that defendants violated his Eighth Amendment rights by

disregarding his single-cell order and compelling him to double-bunk. It appears clear from the

record that plaintiff at one time had a single-cell order. There is a dispute—which is apparently

immaterial—as to whether the order issued on January 6 or January 7, 2010. Defendants

contend that the order itself provided for review upon transfer to a new institution. A letter that Rasheed received on January 6, 2010, informed him that he had been placed on a single-cell restriction. (Rasheed Aff. Ex. E). Affidavits from defendants and an entry in the IMS database identify a single-cell restriction with a start date of January 7, 2010, with the comment, "review single cell status upon classification to another facility other than SBCC." (Rasheed Aff. Ex. N). It would appear that the IMS database entry is likely the official single-cell order. In fact, Rasheed appears to recognize that the IMS database entry could provide an official listing of any medical and mental restrictions. (*See* Pl.'s Opp. Defs.' Mot. Dismiss 1; Pl.'s Suppl. Aff. Opp. Defs.' Mot. Strike ¶ 5).[12] The official Massachusetts DOC policy for intra-system transfers appears to suggest that facilities that utilize IMS must update all medical orders in that system. (103 DOC 630.16). The policy for requests for reasonable accommodations appears to suggest that medical orders for medically prescribed accommodation "shall enter . . . in the 'Restrictions/Limitations/Special Needs' section of the 'Medical Restrictions' screen of the Medical Module of the IMS." (103 DOC 207.04). However, and in any event, because the affidavits submitted by defendants do not specifically point to the IMS entry, and Rasheed appears to contend that the January 6, 2010 letter is the official single-cell order, the Court must accept that this fact is in dispute.

What is not in dispute, however, is that the January 6 letter does not provide that Rasheed's single-cell assignment is permanent and irrevocable.[13] Katherine O'Neill, the

---

[12] Rasheed contends, however, that the entry is "falsified and fabricated." (*Id.*). That is a conclusory statement for which he provides no underlying evidence.

[13] The letter also comes from the Deputy Superintendent of SBCC, which suggests that it would not have any effect beyond SBCC.

Director of Behavioral Health for the DOC, stated in an affidavit that single-cell orders based on mental-health needs are not permanent because "mental health needs are fluid." (O'Neill Aff. ¶ 8). Therefore, even if the single-cell order did not specifically state that it would be reviewed upon transfer to another facility, there is no evidence or reason to believe that the single-cell order was permanent and irrevocable.

The next issue is whether defendants were deliberately indifferent to Rasheed mental-health needs by refusing to assign him to a single cell. To evaluate that issue, the Court must examine whether Rasheed had a medical evaluation that determined he needed a single cell, and if so, whether defendants ignored that evaluation. Rasheed was transferred to MCI-Concord from SBCC on February 5, 2013. Upon transfer, medical staff conducted a review of Rasheed's "single cell order in IMS, . . . [his] medical charts . . . and also [his] 6 part folder." (Rasheed Aff. Ex. M). On February 11, 2013, Meaghan Dupuis, the mental-health director at MCI-Concord, determined that Rasheed "does not meet criteria for [mental health] single cell at this facility. [He] is not an open [mental health] case. [Therefore,] [s]ingle cell order terminated." (Rasheed Aff. Ex. N). A March 13, 2013 letter from Abby Wilson, a licensed mental health counselor, to Rasheed confirmed that determination. Wilson wrote that "there is no clinical indication for you to be placed on single cell status for [m]ental [h]ealth reasons while at MCI-Concord. You are not currently an open mental health case and have not been involved in treatment with mental health for many years." (Rasheed Aff. Ex. M). The affidavit of Katherine O'Neill, the director of behavior health for the DOC, also confirmed that conclusion. She stated that "Mr. Rasheed was transferred to MCI-Concord on February 5, 2013, a thorough review of his mental health needs was made and there was no clinical indication for an order for a single cell. Thus, the

single-cell order was discontinued on February 11, 2013 by the Mental Health Director at MCI-Concord." (O'Neill Aff. ¶ 9).[14] Rasheed has offered no countervailing evidence.

Therefore, the undisputed evidence shows that defendants did not disregard a medical determination that Rasheed required a single-cell assignment. The undisputed evidence also shows that defendants had no role in Rasheed's mental-health care. Rasheed's single-cell order was discontinued by the mental-health director at MCI-Concord. None of the defendants is a medical practitioner. None of the defendants is alleged to have direct involvement in Rasheed's medical care. They are entitled to rely on the medical judgment and expertise of the prison mental-health staff. The complaint alleges that the only way defendants interfered with his medical care was by ignoring his single-cell order and the recommendations that led to that order. However, that single-cell order was discontinued by the mental-health director, not defendants. Accordingly, Rasheed's claims against defendants must fail.

In his opposition to the motion and in subsequent supplemental filings, Rasheed appears to allege some sort of conspiracy between defendants and medical health staff. The complaint is

---

[14] Other entries in the docket also support a finding that Rasheed received a mental-health evaluation. In a March 14, 2013 letter from Bissonnette to Rasheed, Bissonnette states that

> documentation revealed that from January 7, 2010 until February 5, 2013 mental health staff at [SBCC] ordered a single cell for you. The documentation clearly states that a review of the single cell status will occur upon classification to another facility other than SBCC. Further documentation shows that on February 11, 2013, MCI Concord Mental Health staff reviewed the status of the order and determined that you are not an open Mental Health patient and do not meet criteria for a mental health single cell at this facility. Therefore, the medical order was not renewed. If you have mental health concerns, you may submit a sick slip in order to be scheduled for an evaluation.

(Rasheed Aff. Ex. P). Letters dated April 9, 2013, and April 25, 2013, from Bissonnette to Rasheed also confirm the mental-health evaluation. (*See* Rasheed Aff. Exs. X, Z). On June 23, 2014, Rasheed met with Meaghan Dupuis for appraisal and mental-health evaluation. (Rasheed Aff. Ex. I-1). In the treatment discussion, Dupuis noted that inmate "has been open [mental health] in the past but has not engaged in [mental health] treatment in the last 5+ years. [Inmate] does exhibit signs of PTSD and is anxious about current legal issues that might result in release to the community. No clinical indication for psych meds at this time." (*Id.*).

devoid of such allegations, and Rasheed has submitted no evidence in support of such a contention. Where the record contains evidence that Rasheed's mental-health status was reviewed by MPCH medical staff, he may not rebut this evidence with unsupported allegations of conspiracy. In addition, Rasheed appears to allege that defendants falsified his records and that his single-cell order was "purposefully tampered with" by defendants "in order to deprive[] [him] of his recommended mental health treatment." (Pl.'s Suppl. Aff. Opp. Defs.' Mot. Strike). There is no admissible evidence in the record, however, that supports his claim that defendants tampered with his medical records.

The undisputed facts demonstrate that Rasheed has failed to produce evidence of a violation of his Eighth Amendment rights. His mental health was evaluated upon his arrival at MCI-Concord. Following that evaluation, his single-cell order was discontinued by the mental-health director. Thus, Rasheed has failed to provide evidence that defendants had an actual, subjective appreciation of the risk of housing him in a cell with another inmate, and refused to take corrective action. An official cannot act indifferently where he is unaware of a risk. The record evidence further shows that defendants followed standard prison procedures in having Rasheed evaluated, and then relied on the medical evaluation in their assignment decision. Moreover, the decision to terminate Rasheed's single-cell order was made by employees of MPCH. (103 DOC 610.01; O'Neill Aff. ¶ 3). Thus, defendants were not "personally involved" in the decision to terminate that order, and did not knowingly dismiss a serious risk to Rasheed's health by acting in compliance with the decision.

Rasheed has also failed to establish the objective component of the Eighth Amendment standard. Housing him in a double cell, after an independent mental-health examination

concluded that his mental-health needs do not preclude double-bunking, does not constitute a deprivation so shocking as to create a constitutional violation. *Estelle*, 429 U.S. 347 (requiring the "infliction of unnecessary suffering [that] is inconsistent with contemporary standards of decency" to satisfy the objective element). "It remains the clinical opinion of the MPCH mental health team that [plaintiff] does not have a functional impairment that requires placement in a single cell at this time." (O'Neill Aff. ¶ 10). Rasheed's mere disagreement with the mental-health director's decision to terminate his single-cell order, and defendants' compliance with that decision, does not rise to "deliberate indifference" to his mental-health needs and therefore does not violate the Eighth Amendment.

Accordingly, Counts One and Two will be dismissed.[15]

### 2.      Equal Protection Claim

Rasheed further contends that MCI-Concord's NEADS program violates his Constitutional rights. It is unclear whether the claim is predicated on the Due Process Clause, the Equal Protection Clause, or the Eighth Amendment. The complaint alleges that defendants "have refused to modify their statewide housing policy to accommodate Rasheed's serious mental health needs and disability . . . while treating the dogs in the NEADS Program more favorabl[y]."

This claim appears to be frivolous. The NEADS program is completely voluntary, and

---

[15] To the extent that Rasheed seeks to recover compensatory damages, his claims are also barred for independent reasons. Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." Courts have interpreted this provision to bar recovery of compensatory damages without an allegation of physical injury. *Restucci v. Clarke*, 669 F. Supp. 2d 150, 159 (D. Mass. 2009) (collecting cases). Here, the complaint does not allege a physical injury. Therefore, Rasheed's claims for compensatory damages are barred.

the complaint fails to make any plausible allegation that the institution of NEADS at MCI-

Concord violates Rasheed's constitutional rights.  Accordingly, Count Three will be dismissed.

**V.**     **Conclusion**

For the foregoing reasons,

1.     defendants' motion to dismiss or for summary judgment (Docket No. 25), treated

as a motion for summary judgment, is GRANTED;

2.     plaintiff's motion to strike affidavits (Docket No. 33) is DENIED;

3.     defendants' motion to strike plaintiff's affidavit (Docket No. 38) is GRANTED in

part and DENIED in part;

4.     plaintiff's motion to strike defendants' motion to strike as untimely (Docket No.

40) is DENIED; and

5.     defendants' motion to strike plaintiff's supplemental affidavit (Docket No. 43) is

GRANTED in part and DENIED in part.

**So Ordered.**


                                        /s/ F. Dennis Saylor_____
                                        F. Dennis Saylor IV
Dated:   May 12, 2015                   United States District Judge